UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

THOMAS VIA,

    Plaintiff,

  v.

CITY OF FAIRFIELD, a municipal corporation; CADE BECKWITH, individually, and in his capacity as a police officer for the CITY OF FAIRFIELD; STEVE TROJANOWSKI, SR., individually, and in his official capacity as a police officer for the CITY OF FAIRFIELD; STEVE TROJANOWSKI, JR., individually, and in his official capacity as a police officer for the CITY OF FAIRFIELD; JIMMIE WILLIAMS, individually and in his official capacity as a police officer for the CITY OF FAIRFIELD; and, Fairfield police officers DOES 1-25, inclusive,

    Defendants.
_____/

NO. CIV. 2:10-3202 WBS DAD

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

----oo0oo----

1

1      Plaintiff Thomas Via brought this civil rights action
2 against defendants City of Fairfield and City of Fairfield police
3 officers Cade Beckwith, Steve Trojanowski, Sr., Steve
4 Trojanowski, Jr., and Jimmie Williams based on events leading to
5 his arrest, his arrest, and subsequent criminal charges brought
6 against him.  Pursuant to Federal Rule of Civil Procedure
7 12(b)(6), defendants now move to dismiss the federal and state
8 law claims in plaintiff's Complaint.

## I. Factual and Procedural Background

     On May 8, 2006, plaintiff's ex-girlfriend, Brenda Millner, was arrested after allegedly committing commercial burglary at the Solano County Mall in Fairfield, California. (Compl. ¶ 10.)  Although plaintiff was not involved with the burglary, Millner was driving plaintiff's car and Officer Beckwith contacted plaintiff to inquire about Millner's explanation for the burglary.  (Id. ¶¶ 12-13.)  During a different conversation, Officer Beckwith also informed plaintiff that plaintiff needed to call Officer Trojanowski, Jr., to arrange to pick up his car.  Plaintiff called the number Officer Beckwith provided and left a message requesting Officer Trojanowski, Jr., return his call.  (Id. ¶ 13.)  Plaintiff later learned that Officer Trojanowski, Jr., had ordered his car impounded.  (Id. ¶ 14.)

     Later that day, plaintiff had a conversation with Millner that Officer Trojanowski, Jr., overheard because Millner was on a speaker phone in a holding cell.  (Id.)  During that conversation, plaintiff explained to Millner that she was being treated badly because she is an African-American woman and the

2

Fairfield Police Department is corrupt. (Id.)

Around 2:00 a.m. on May 9, 2006, Officer Trojanowski, Sr., allegedly called plaintiff at his residence and accused plaintiff of threatening him over the phone on May 8, 2006. (Id. ¶ 15.) Plaintiff denied threatening Officer Trojanowski, Sr. (Id.) Around 7:00 a.m. that same morning, Officer Trojanowski, Sr., called plaintiff several more times about the alleged threatening phone call. (Id. ¶ 16.) Around 2:30 p.m. that afternoon, Officer Trojanowski, Sr., called plaintiff again and recorded their conversation without plaintiff's permission. (Id.)

Officers Trojanowski, Sr., and Beckwith allegedly prepared false police reports, which included allegedly false statements by Officer Trojanowski, Jr., and stated that plaintiff had threatened a police officer over the phone. (Id. ¶ 17.) Based on the reports, Officer Trojanowski, Sr., requested that criminal charges be filed against plaintiff, and a warrant for plaintiff's arrest was issued. (Id.)

On May 13, 2006, Officer Williams went to plaintiff's residence to arrest him and allegedly tasered plaintiff without warning even though plaintiff did not resist arrest. (Id. ¶ 18.) After tasering plaintiff, Officer Williams allegedly pointed "OC spray" at plaintiff and threatened to spray him. (Id. ¶ 19.) Other officers subsequently arrived at the scene and handcuffed plaintiff, at which time plaintiff suffered a seizure and was transported to a hospital. (Id.) In his police report, Officer Williams stated that plaintiff resisted arrest, which resulted in subsequent criminal charges against plaintiff. (Id.)

3

After being released from the hospital, plaintiff was in jail for about three to four hours and was released on bail. (Id. ¶ 20.) Plaintiff was subsequently arraigned and, at plaintiff's preliminary hearing, Officers Trojanowski, Sr., and Beckwith allegedly testified falsely against him. (Id.) The resisting arrest charges were dismissed on May 26, 2010, and all remaining charges against plaintiff were dismissed on September 14, 2010. (Id. ¶ 21.)

Plaintiff filed his Complaint on November 29, 2010, alleging claims for 1) violations of 42 U.S.C. § 1983 against the officer defendants based on his Fourth Amendment rights; 2) Monell liability against the City of Fairfield; 3) assault and battery against Officer Williams; 4) false arrest and imprisonment against the officer defendants; 5) intentional infliction of emotional distress against the officer defendants; 6) violations of California Civil Code section 51.7 against the officer defendants; 7) violations of California Civil Code section 52.1 against the officer defendants; and 8) negligence against the officer defendants.[1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants now move to dismiss plaintiff's Complaint in its entirety.

///

---

[1] Although included in his Complaint, plaintiff has dismissed the following claims with prejudice: 1) § 1983 claim against the officer defendants for violations of his Fifth and Fourteenth Amendment due process rights, Fourteenth Amendment equal protection rights, and Fourth and Ninth Amendment privacy rights; 2) negligent infliction of emotional distress claim against the officer defendants; and 3) "Negligent Hiring, Retention, Training, Supervision, and Discipline" claim against the City of Fairfield. (Docket No. 7.)

4

II.  Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57).

In general, a court may not consider items outside the pleadings when deciding a motion to dismiss, but may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice may properly be taken of matters of public record outside the pleadings. See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504

5

(9th Cir. 1986). Defendants request that the court take judicial notice of the Claim for Damages plaintiff submitted to the City of Fairfield on October 20, 2006, and the City of Fairfield's Notice of Rejected Claim for Damages dated March 15, 2007. Because both of these documents are public records and plaintiff does not dispute the authenticity of the copies provided or object to the court's consideration of them, the court will take judicial notice of the two documents.[2]

### A. Section 1983 Claim Against the Officer Defendants

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.[3]  42 U.S.C. § 1983;

---

[2] Defendants also request that the court take judicial notice of the Amended Felony Complaint filed against plaintiff on July 31, 2006. The court declines to take judicial notice of this document because consideration of the document is not necessary to resolve defendants' motion to dismiss.

[3] Defendants initially argued that plaintiff's § 1983 claims were time barred because plaintiff filed his Complaint outside of the applicable two-year statute of limitations. See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004) (California's two-year statute of limitations for personal injury actions applies to § 1983 suits in federal court). Because plaintiff alleges that the resisting arrest charges were not dismissed until May 26, 2010, and all remaining criminal charges were not dismissed until September 14, 2010, (Compl. ¶ 21), the

6

1  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

2         The constitutional rights underlying plaintiff's § 1983
3  claim against the officer defendants are alleged as follows:

> The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff's action specifically includes, but is not limited to, a claim for malicious prosecution that wrongfully kept Plaintiff facing criminal charges, by Defendant Officers BECKWITH, TROJANOWSKI, SR., TROJANOWSKI, JR., WILLIAMS, and DOES 1-10, intentionally deceiving the District Attorney's office into filing and pursuing false criminal charges against Plaintiff; . . . . The right to be free from arrest without probable cause by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution . . . .[4]

(Compl. ¶ 29(a), (c).)

         In § 1983 actions, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" Pearson v. Callahan, --- U.S. ----, ----, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of

---

statute of limitations on plaintiff's respective § 1983 claims was tolled until the related criminal charges were dismissed. See Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995) ("In California, the statute of limitations for section 1983 actions is tolled by Cal. Gov't Code § 945.3 while criminal charges are pending.").

[4] The court assumes that plaintiff's § 1983 claim against Officer Williams is based on his alleged use of excessive force and the false statements he made in his police report that led to plaintiff being charged with resisting arrest, not Officer Williams's arrest of plaintiff based on a facially valid arrest warrant.

7

whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful."  McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000); see Ewing v. City of Stockton, No. Civ. 2:05-2270 WBS GGH, 2010 WL 3516351, at *3-4 (E.D. Cal. Sept. 10, 2010) (discussing application of the qualified immunity standard in greater detail).  The Supreme Court recently held that a court may assume the existence of a constitutional violation under the first inquiry for purposes of the qualified immunity analysis.  Pearson, 129 S. Ct. at 818.

Generally, qualified immunity "should be decided at the earliest possible stage in the litigation because it is not only an immunity from liability but an immunity from suit."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995) (citing Hunter v. Bryant, 502 U.S. 224, 227-28 (1991) (per curiam)).  On a motion to dismiss, however, assessing qualified immunity is difficult if an officer's claim to qualified immunity depends on a version of the facts that differs from the allegations in the complaint because the court must take the allegations in the complaint as true.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 793-94 (2d Cir. 2002) (explaining that ruling on qualified immunity in the context of a Rule 12(b)(6) motion would be premature because the issue "turns on factual questions that cannot be resolved at this stage of the proceedings"); Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001) ("[A] Rule 12(b)(6) dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified

immunity applies.").

Assuming plaintiff sufficiently alleges violations of his Constitutional rights, this is precisely the type of case in which the court cannot resolve qualified immunity on a motion to dismiss when plaintiff's allegations in his Complaint are taken as true.[5]  Accordingly, because the court cannot resolve qualified immunity at this time, it must deny defendants' motion to dismiss on that ground.

B.   *Monell* Claim Against the City of Fairfield

As § 1983 does not provide for vicarious liability, local governments "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 693 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

In his Monell claim, plaintiff merely recites the general standards giving rise to municipal liability under § 1983, such as allegations stating:

> [T]he acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF FAIRFIELD Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens. . . . [T]he damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or

---

[5]  Defendants do not appear to seek qualified immunity at this stage in the proceedings for plaintiff's § 1983 claim based on Officer Williams's alleged use of excessive force.

9

1      discipline of members of the Defendant FAIRFIELD Police
2      Department.

3 (Compl. ¶¶ 30, 33.)  Plaintiff contends these allegations are
4 sufficient because, in order to include any greater detail,
5 plaintiff needs discovery of the City's policies and the
6 defendant officers' personnel files.  The court agrees that
7 discovery may be necessary in many cases to determine whether a
8 plaintiff has a cognizable Monell claim because police
9 departments do not have express policies to violate
10 constitutional rights and do not offer police officers' personnel
11 files for public viewing.  Likely in recognition of this reality,
12 the Ninth Circuit has repeatedly held that "a claim of municipal
13 liability under [§] 1983 is sufficient to withstand a motion to
14 dismiss even if the claim is based on nothing more than a bare
15 allegation that the individual officers' conduct conformed to
16 official policy, custom, or practice." Galbraith v. Cnty. of
17 Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002) (alteration in
18 original).

19           This low threshold for pleading a Monell claim,
20 however, cannot survive after the Supreme Court rejected
21 "[t]hreadbare recitals of the elements of a cause of action,
22 supported by mere conclusory statements" in Iqbal.  Iqbal, 129 S.
23 Ct. at 1949.  Since Iqbal, courts have repeatedly rejected such
24 conclusory allegations that lack factual content from which one
25 could plausibly infer Monell liability.  See, e.g., Palermo v.
26 Town of N. Reading, 370 Fed. App'x 128, 131 n.4 (10th Cir. 2010)
27 (dismissing a Monell claim when "the complaint as a whole
28 contained no factual assertions whatsoever regarding Town

10

policy"); Dimming v. Pima Cnty., No. CV-09-189 TUC CKJ, 2011 WL 855797, at *2-3 (D. Ariz. Mar. 11, 2011) (same); Haley v. Gipson, No. CV 11-787, 2011 WL 838919, at *2 (C.D. Cal. Feb. 28, 2011) (same); Telles v. City of Waterford, No. 1:10-cv-00982 AWI SKO, 2010 WL 5314360, at *4 (E.D. Cal. Dec. 20, 2010) (same); Jenkins v. Humboldt Cnty., No. C 09-5899 PJH, 2010 WL 1267113, at *3 (N.D. Cal. Mar. 29, 2010) (same); Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149-50 (E.D. Cal. 2009).

Although plaintiff may benefit from discovery, the Supreme Court has made it clear that threadbare allegations are insufficient to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S.Ct. at 1950. Accordingly, given the insufficiency of plaintiff's conclusory allegations, the court will grant defendants' motion to dismiss plaintiff's Monell claim.

C. State Law Claims

As a prerequisite to asserting state law causes of action against a public entity or public employee, California's Tort Claims Act ("TCA"), Cal. Gov't Code §§ 810-978.8, requires a plaintiff to first present to the public entity "all claims for money or damages" against the local public entity or public employee. Id. § 905; see id. § 950.2 (applying the TCA to any "cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee . . . ."). A claim under the TCA must be submitted to the public entity within six months of the accrual of the plaintiff's cause of action. Id. § 911.2(a).

"[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity" or public employee. California v. Super. Ct., 32 Cal. 4th 1234, 1239 (2004). Timely claim presentation is "an element of the plaintiff's cause of action," Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209 (2007), and thus a plaintiff must "allege facts demonstrating or excusing compliance with the claim presentation requirement" in his complaint. California v. Super. Ct., 32 Cal. 4th 1234, 1243 (2004); accord Summerfield v. Fackrell, No. Civ. 2:10-2884 WBS EFB, 2011 WL 794971, at *2 (E.D. Cal. Mar. 1, 2011).

Section 910 of the TCA requires a TCA claim to state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide a "general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." Cal. Gov't Code § 910. Although a TCA claim "need not contain the detail and specificity required of a pleading," it must "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." Stockett v. Assoc. of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 446 (2004) (quoting City of San Jose v. Super. Ct., 12 Cal. 3d 447, 455 (1974)) (internal quotation marks omitted in second quotation).

When allegations in a complaint vary from the allegations in a TCA claim, courts have distinguished between a complaint that "merely elaborates or adds further detail to a

12

claim" and one that is "based on an 'entirely different set of facts.'" Id. at 447 (quoting Stevenson v. S.F. Housing Auth., 24 Cal. App. 4th 269, 278 (1st Dist. 1994)).  Similarly, while a complaint may include allegations giving rise to new "theories" for a cause of action properly presented in a TCA claim, the "facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim." Id. at 446-47. "[W]here there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' [] courts [have] generally found the complaint barred." Id. at 447 (quoting Blair v. Super. Ct., 218 Cal. App. 3d 221, 226 (3d Dist. 1990)).

Although plaintiff's Complaint fails to allege compliance with the TCA,[6] the court has taken judicial notice of plaintiff's TCA claim.  In his TCA claim, plaintiff states that the claimed "damage or injury occur[red]" on May 13, 2006, and, when requested to "explain the circumstances that led to the alleged damage or injury" and "state all the facts which support your claim," plaintiff wrote: "Injury caused by Officer A. Williams and other officers of the Fairfield Police Department while being arrested."  (Defs.' Req. for Jud. Notice Ex. 1 (capitalization omitted) (emphasis added).)  When requested to state the "specific damage or injury" that resulted from the "alleged action," plaintiff wrote: "Injuries to both wrists,

---

[6] Plaintiff concedes that he failed to allege compliance with the TCA and requests leave to amend this deficiency, which the court will grant.

13

back, neck, right leg & foot, [illegible] attack and head injury from being tased and arrested. Stress. Taser marks on my back." (Id. (capitalization omitted).)

Upon review of plaintiff's TCA claim, the City of Fairfield received sufficient notice of plaintiff's claims relating to the amount of force Officer Williams and other arresting officers used while arresting plaintiff on May 13, 2006. Nothing in the TCA claim, however, suggests that plaintiff was claiming an injury for the lack of probable cause supporting the issuance and execution of the arrest warrant or the criminal charges resulting from the officers' allegedly false police reports. Allegations about the false information in the police reports do not provide greater detail about--and are not even related to--the allegations of force in plaintiff's TCA claim. Put another way, the TCA claim would lead the City of Fairfield to believe that, if Williams's had not allegedly used unreasonable force while arresting plaintiff, plaintiff would not have complained about his arrest or the resulting criminal charges. Accordingly, because plaintiff failed to file a TCA claim giving the City of Fairfield notice about his alleged injuries resulting from the allegedly false statements in the police reports, and the time to file a timely TCA claim has long since expired, the court must dismiss plaintiff's causes of actions based on that alleged conduct.[7]

---

[7] For the first time in their reply, defendants argue that plaintiff's failure to present a timely claim under the TCA also bars his first cause of action "alluding to state-law malicious prosecution." (Reply 4:13-14 (Docket No. 15).) Plaintiff's first cause of action, however, is a federal claim under § 1983 and is thus not subject to the TCA. May v. Enomoto,

14

The allegations supporting plaintiff's cause of action for false arrest and imprisonment are limited to allegations of misconduct absent from the TCA claim, (see Compl. ¶ 43), and thus that cause of action must be dismissed for failure to file a timely TCA claim.  To allege his causes of action for intentional infliction of emotional distress, negligence, and violations of California Civil Code sections 51.7 and 52.1, plaintiff merely incorporates the factual allegations from prior paragraphs in his Complaint, thus it is not entirely clear which conduct gives rise to each cause of action.  With respect to Officers Trojanowski, Sr., Trojanowski, Jr., and Beckwith, however, the only factual allegations about them involve the alleged conduct that was absent from plaintiff's TCA claim, thus the court must grant defendants' motion to dismiss plaintiff's state law causes of action against those officers because plaintiff failed to file a timely TCA claim about those officers' alleged misconduct.

With respect to Officer Williams, plaintiff complied with the TCA presentment requirement as to his allegations that Officer Williams used excessive force while arresting plaintiff, thus plaintiff's state law causes of action based on those allegations are not subject to dismissal.  Plaintiff's TCA claim did not, however, give the City of Fairfield notice about Officer Williams's alleged preparation of a false police report against plaintiff and the resulting criminal charges for resisting

---

633 F.2d 164, 167 (9th Cir. 1980); see Awabdy v. City of Adelanto, 368 F.3d 1062, 1066-70 (recognizing and discussing § 1983 claims brought under a malicious prosecution theory).  Plaintiff has not alleged a state-law malicious prosecution cause of action.

15

arrest.  Any causes of action based on that alleged misconduct is therefore barred for failure to present a timely TCA claim.

Moreover, even if Officer Williams's preparation of a false police report and initiation of criminal charges for resisting arrest could be viewed as merely elaborating on the allegations in plaintiff's TCA claim that Officer Williams used excessive force while arresting him, plaintiff's causes of action against Officer Williams based on his preparation of a false police report and recommendation that criminal charges be filed would nonetheless be subject to dismissal under California Government Code section 821.6.  Section 821.6 grants immunity to public employees for "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.

Although section 821.6 primarily immunizes public employees from malicious prosecution claims, it "extends to actions taken in preparation for formal proceedings" when those actions are "'an essential step' toward the institution of formal proceedings."  <u>Amylou R. v. Cnty. of Riverside</u>, 28 Cal. App. 4th 1205, 1209-10 (4th Dist. 1994) (quoting <u>Kemmerer v. Cnty. of Fresno</u>, 200 Cal. App. 3d 1426, 1436-37 (1988)); <u>accord</u> <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 488 (9th Cir. 2007).  For example, courts have held that immunity under section 821.6 extends to investigating crimes, <u>Amylou R.</u>, 28 Cal. App. 4th at 1209-10, concealing evidence, <u>Randle v. City & Cnty. of San Francisco</u>, 186 Cal. App. 3d 449, 457-58 (1st Dist. 1986), and presenting false information to a district attorney.  <u>Asgari v.</u>

16

City of Los Angeles, 15 Cal. 4th 744, 759 (1997).  Accordingly, to the extent that any of plaintiff's state law causes of action are based on Officer Williams's alleged false report about plaintiff's arrest and the resulting criminal charges, Officer Williams is immune from suit for those causes of action under section 821.6.[8]

With the exception of his assault and battery cause of action,[9] it is unclear whether plaintiff's remaining state law causes of action against Officer Williams are based on his use of force during plaintiff's arrest or his false police report and the resulting criminal charges, for which he is immune.  Because plaintiff has the burden of pleading "facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity," Keyes v. Santa Clara Valley Water Dist., 128

---

[8] Defendants also claim immunity under California Government Code section 820.2, which provides, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  Because immunity for discretionary acts under section 820.2 is limited and extends only to "those basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government, it does not limit defendants' liability in this case.  Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1051 (2007) (quoting Johnson v. State of California, 69 Cal. 2d 782, 793-94 (1968)) (alterations and omission in original) (internal quotation marks omitted); see, e.g., Liberal v. Estrada, 632 F.3d 1064, 1084-85 (9th Cir. 2011) ("As a matter of law, section 820.2 immunity does not apply to an officer's decision to detain or arrest a suspect.").

[9] The immunity section 821.6 affords does not extend to causes of action based on an officer's use of force during an arrest, thus section 821.6 does not immunize Officer Williams from plaintiff's cause of action for assault and battery.  See Blankenhorn v. City of Orange, 485 F.3d 463, 488 (9th Cir. 2007). As previously stated, the court will nonetheless dismiss the cause of action so that plaintiff can allege timely claim presentation under the TCA.

Cal. App. 3d 882, 885 (4th Dist. 1982), the court will dismiss plaintiff's causes of action against Officer Williams for intentional infliction of emotional distress, negligence, and violations of California Civil Code sections 51.7 and 52.1 with leave to amend those causes of action if plaintiff can do so without relying on, or incorporation allegations about, immunized conduct.

Lastly, defendants argue that plaintiff's common law negligence cause of action against the officer defendants[10] is barred by California Government Code section 815, which "abolishes common law tort liability for public entities." Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 899 (2008); see Cal. Gov't Code § 815(a) ("Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."). The officer defendants are not immune under section 815 because that section affords immunity only to public entities and does not affect a public employee's liability for common law claims. See Lloyd v. Cnty. of Los Angeles, 172 Cal. App. 4th 320, 330 (2d Dist. 2009) ("Irrespective of Government Code section 815's elimination of common law tort liability for public entities, a public employee generally is liable for an injury caused by his or her act or omission to the same extent as a private person . . . ."); see also Avila v. Citrus Cmty. Coll. Dist., 38 Cal. 4th 148, 160

---

[10] Based on the court's prior analysis, the only viable negligence cause of action plaintiff may have is one against Officer Williams based on his use of force during plaintiff's arrest.

18

(2006) ("By statute, the Legislature has extended this common law standard of tort liability to public employees . . . .") (citing Cal. Gov't Code § 820(a)).

      IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiff's Complaint be, and the same hereby is, DENIED with respect to plaintiff's § 1983 claim against the officer defendants; GRANTED with respect to plaintiff's Monell claim against the City of Fairfield; and GRANTED with respect to all of plaintiff's state law causes of action.

      Plaintiff has thirty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.

DATED: June 10, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE